**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **LAURIE R. HAMLETT,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **Civil Action No. 3:03-CV-2202-BH (M)** |
| **ALBERTO GONZALES,[1] ATTORNEY** | § | |
| **GENERAL, UNITED STATES OF** | § | |
| **AMERICA,** | § | |
| | § | |
| **Defendant.** | § | **Consent Case** |

## MEMORANDUM OPINION AND ORDER

Pursuant to the District Court's *Order of Reassignment*, filed July 26, 2004, this matter has been transferred to the undersigned United States Magistrate Judge for the conduct of all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c).  Before the Court are:

(1)   *Defendant John Ashcroft's Motion for Summary Judgment*, filed December 30, 2004;

(2)   *Defendant Ashcroft's Brief in Support of his Motion for Summary Judgment* ("Def. MSJ Br."), filed December 30, 2004;

(3)   *Appendix to Defendant Ashcroft's Motion for Summary Judgment, and Brief in Support Thereof* ("Def. MSJ App."), filed December 30, 2004;

(4)   *Plaintiff's Response to Defendant's Motion for Summary Judgment*, filed January 19, 2005;

(5)   *Plaintiff's Brief in Support of Her Response to Defendant's Motion for Summary Judgment* ("Pl. Resp. Br."), filed January 19, 2005;

---

[1]Alberto Gonzales is substituted for his predecessor, John Ashcroft, as Attorney General of the United States, pursuant to Fed. R. Civ. P. 25(d)(1).

(6)     *Appendix to Plaintiff's Response to Defendant's Motiion* [sic] *for Summary Judgment and to Plaintiff's Brief in Support of Her Response to Defendant's Motion for Summary Judgment* ("Pl. Resp. App."), filed January 19, 2005;

(7)     *Defendant Ashcroft's Reply Brief in Support of His Motion for Summary Judgment* ("Def. Reply Br."), filed February 3, 2005;

(8)     *Supplemental Appendix to Defendant Ashcroft's Reply Brief in Support of His Motion for Summary Judgment* ("Def. Reply App."), filed February 3, 2005;

(9)     *Plaintiff's Brief in Reply to Defendant Ashcroft's Reply Brief in Support of His Motion for Summary Judgment Filed on February 3, 2005* ("Pl. Surreply Br."), filed February 23, 2005;

(10)    *Appendix to Plaintiff's Brief in Reply to Defendant Ashcroft's Reply Brief in Support of His Motion for Summary Judgment Filed on February 3, 2005* ("Pl. Surreply App."), filed February 23, 2005;

(11)    *Plaintiff's Report of Results of Mediation and Plaintiff's Motion for Relief* ("Pl. Mot. for Relief"), filed March 9, 2005;

(12)    *Plaintiff's Brief in Support of her Motion for Relief Filed on March 9, 2005* ("Pl. Br. in Support of Mot. for Relief"), filed March 15, 2005; and

(13)    *Defendant Gonzalez' Response to Plaintiff's Brief in Support of Her Motion for Relief* ("Def. Resp. to Pl. Mot. for Relief"), filed March 24, 2005.

Having reviewed the pertinent pleadings and the law applicable to the issues raised, the Court finds that *Defendant John Ashcroft's Motion for Summary Judgment* should be **GRANTED**, and *Plaintiff's Motion for Relief* should be **DENIED.**

## I.   BACKGROUND

### A.     Facts and Administrative Proceedings

Plaintiff Laurie Hamlett ("Plaintiff"), who is proceeding pro se, is a practicing attorney who has been licensed by the State of Texas since 1986.  On September 30, 1990, she began working for the Department of Justice ("DOJ") as an Assistant United States Attorney ("AUSA") in the Corpus Christi, Texas, Division of the United States Attorney's Office ("USAO") for the Southern

District of Texas ("SDTX").  (Pl. Resp. App., Exh. 1 at 1.)  In 1992, Plaintiff was transferred to the

McAllen Division of the SDTX; in 1996, she was assigned to the Financial Litigation Unit ("FLU")

within the Civil Division.  (Pl. Resp. App., Exh. 2 at 129, 152.)

Between 1998 and 1999, Plaintiff filed three separate complaints with the Equal

Employment Opportunity Commission ("EEOC") against the DOJ, alleging claims of

discrimination and retaliation based on her pay, office assignment, and failure to receive a

promotion.  (Pl. Surreply App., Exh. 1-3.)  Plaintiff's counsel, who represented her throughout the

administrative proceedings on those complaints, requested that the administrative judge consolidate

the complaints.  (Pl. Surreply App., Exh. 5 at 22.)  That request was granted on April 20, 2000.  *Id.*

On October 18, 2000, the United States Attorney for the SDTX, Mervyn Mosbacker

("Mosbacker") proposed Plaintiff's removal from employment with the DOJ.  (Def. MSJ App.,

Exh. 1 at 1.)  That proposal was sustained by the DOJ's Executive Office for United States

Attorneys, and Plaintiff was terminated on March 23, 2001.  (Def. MSJ App., Exh. 1 at 15.)

Plaintiff appealed her termination to the Merit Systems Protection Board ("MSPB").  An

administrative judge conducted a hearing on that MSPB appeal on July 8, 2002.  (Pl. Surreply App.,

Exh. 6 at 24-26.)  The record does not indicate the outcome of that appeal, but Plaintiff's appendix

includes a final order issued by the MSPB on April 30, 2004, well after the instant suit had been

filed, denying Plaintiff's petition for review of the administrative judge's decision.  (Pl. Surreply

App., Exh. 6 at 27-30.)

In the interim, on July 11, 2002, an administrative judge conducted a hearing regarding

Plaintiff's consolidated EEOC complaints.  (Pl. Surreply App., Exh. 20 at 142.)  Although the

record does not include information regarding the outcome of that hearing, the EEOC's Office of

Federal Operations denied Plaintiff's request for reconsideration of the EEOC's decision on her consolidated complaints on June 25, 2003.  (Pl. Surreply App., Exh. 7 at 41A-42.)

**B.**     **Procedural History**

On September 26, 2003, Plaintiff filed this action pro se, alleging that the United States Attorney General John Ashcroft ("Defendant") and Cari Dominguez, Chair of the EEOC, discriminated against her under Title VII.  Plaintiff amended her complaint on October 21, 2003, alleging that Defendants engaged in "unlawful practices in violation of the Constitution of the United States, Title VII of the Civil Rights Act of 1964, as amended, the Equal Pay Act, [and] the Administrative Procedure Act."  (Am. Compl. at 1.)

Defendant moved for dismissal of Plaintiff's claims for lack of subject matter jurisdiction under 12(b)(1) and for failure to state a claim under 12(b)(6).  *See Hamlett v. Ashcroft*, 2004 WL 813184, at *1 (N.D. Tex. Apr. 14, 2004).  On April 14, 2004, this Court issued its *Findings, Conclusions and Recommendation* on Defendant's motion to dismiss, recommending that Plaintiff's Title VII claims against the EEOC be dismissed for lack of subject matter jurisdiction, and that her Equal Pay Act and Administrative Procedures Act claims be dismissed for failure to state a claim.  *Id.* at *3-5.  This Court further recommended that Plaintiff receive leave to amend her complaint to clarify her intent to pursue claims of employment discrimination against the DOJ. The District Court accepted these findings, conclusions and recommendations on May 11, 2004. *Hamlett v. Ashcroft*, 2004 WL 1074028, at *1 (N.D. Tex. May 11, 2004).

On June 1, 2004, Plaintiff filed her *Second Amended Complaint*, alleging that Defendant violated Title VII by discriminating and retaliating against her.  (Second Am. Compl. at 1.)  In that complaint, she asserts that "[f]rom on or about mid-May 1992 until on or about the present,"

Defendant intentionally discriminated against her on the basis of her sex and employed practices that had the effect of discriminating against her because of her sex.  *Id*. at ¶ 1-2.  She also alleges that in that same time period, Defendant retaliated against her for opposing unlawful discrimination, participating in investigations about unlawful discrimination, and filing charges of discrimination. *Id*. at ¶ 3-5.  She further alleges that Defendant retaliated against her "[f]rom on or about 1999 until on or about the present" for contacting her United States Senators regarding a former United States Attorney.  *Id*. at ¶ 6.  By her suit, Plaintiff seeks monetary damages and "all other available relief." *Id*. at ¶ 3.

## C.    Motion for Summary Judgment

On December 30, 2004, Defendant filed a motion for summary judgment asserting that dismissal of Plaintiff's *Second Amended Complaint* is appropriate due to her failure to demonstrate a prima facie case of sex discrimination under Title VII.  (Def. MSJ Br. at 5.)  Defendant argued in part that Plaintiff's complaint did not identify specific adverse employment actions.  *Id*.

Plaintiff filed a response on January 19, 2005, asserting that she had suffered numerous adverse employment actions.   In her response, she identified the following actions, which were not mentioned in her complaint or second amended complaint: (1) an involuntary transfer in 1992 from the Corpus Christi Division to the McAllen Division; (2) failure to receive Performance Appraisal Reports ("PARs") for the period from January 1, 1992 to August 3, 1992;  (3) failure to receive PARs for the period of January 1, 1996 to September 1, 1996; (4) failure to receive accurate PARs; (5) an involuntary transfer from the Criminal Division to the Civil Division; and (6) removal from employment.  (Pl. Resp. Br. at 2.)

On January 27, 2005, Defendant filed a motion for leave to submit additional summary

judgment evidence with his reply briefing in order to respond to Plaintiff's enumeration of six adverse employment actions in her response.  The Court granted Defendant's motion on January 28, 2005, and allowed Plaintiff to file a surreply.

Defendant's reply, filed on February 3, 2005, argues that the sex discrimination and retaliation claims Plaintiff listed in her response are barred for failure to exhaust administrative remedies.  (Def. Reply Br. at 2-4; 7.)  Defendant further argues that even if Plaintiff timely exhausted her remedies with respect to her termination claim, she has failed to establish a prima facie case of sex discrimination or retaliation.  *Id*. at 5.  Alternatively, Defendant argues that even if Plaintiff could prove a prima facie case, there were legitimate, nondiscriminatory reasons for terminating her employment.  *Id*. at 7, n.3.

In her surreply filed February 23, 2005, Plaintiff states that she did not intend to limit her claims against Defendant to those six actions she specifically mentioned in her response.  She states that she "merely set forth some illustrations.  Moreover, Plaintiff has thoroughly advised Defendant of each of the plethora of adverse employment actions caused by the discriminatory conduct of the USAO-SDTX. . . .in the following ways[.]"  (Pl. Surreply Br. at 1-2.)  Plaintiff then lists the documents found behind Tabs 1 through 9 in her appendix, including her EEOC complaints, documents filed as part of the administrative proceedings on those EEOC complaints, documents related to her appeal of her removal to the MSPB, as well as her complaint, amended complaint, second amended complaint, and response submitted in the instant proceedings.  *Id*. at 1.  Plaintiff asserts that her claims are not time-barred because she timely filed three formal complaints with the EEOC, timely appealed her removal to the MSPB, and should not have been required to exhaust remedies as to any of her other claims.  *Id*. at 3-5.  This matter is now before the court and ripe for

6

determination.

## II.   STANDARD OF REVIEW

"Summary judgment is an appropriate mechanism for resolving issues of law arising from a materially complete factual record." *Burlington N. and Santa Fe Ry. Co. v. Brotherhood of Maint. of Way Employees*, 93 F. Supp. 2d 751, 756 (N.D. Tex. 2000). "Furthermore, disputes over the legal inferences to be gleaned from the facts in evidence will not prevent summary judgment; thus, where a non-movant merely debates the consequences flowing from admitted facts, summary judgment is proper." *Id.* "Interpretations of statutory provisions that are dispositive and which raise only questions of law, there being no contest as to the operative facts, are appropriate for summary judgment." *United States v. Miller*, 2003 WL 23109906, at *3 (N.D. Tex. Dec. 22, 2003).

With regard to factual issues, summary judgment is appropriate when the pleadings and record evidence show that no genuine issue of material facts exists and that the movant is entitled to judgment as a matter of law. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The movant makes such a showing by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The pleadings, depositions, admissions, and affidavits, if any, must demonstrate that no genuine issue of material fact exists. FED. R. CIV. P. 56(c).

Once the movant makes this showing, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial.

*Celotex*, 477 U.S. at 323-24.  To carry this burden, the "opponent must do more than simply show ... some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Instead, the nonmovant must show that the evidence is sufficient to support a resolution of the factual issue in his favor.  *Anderson*, 477 U.S. at 249.  The opponent to summary judgment has the duty to point to specific facts in the record that create a genuine issue of material fact.  *Jones v. Sheehan, Young, & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996).  Rule 56 "does not impose upon the district court a duty to survey the entire record in search of evidence to support a nonmovant's position."  *Id.* (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992); *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir. 1988)).

While all of the evidence must be viewed in a light most favorable to the motion's opponent, *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the nonmovant's summary judgment burden.  *Little*, 37 F.3d at 1075; *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).  Summary judgment in favor of the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to his case and as to which he will bear the burden of proof at trial.  *Celotex*, 477 U.S. at 322-23.

## III.  ANALYSIS

### A.  Title VII Administrative Exhaustion Requirements for Federal Employees

Defendant argues that Plaintiff's Title VII claims are barred for failure to exhaust administrative remedies.  (Def. Reply Br. at 2-4.)  Before bringing suit pursuant to Title VII, "an employee must exhaust his administrative remedies against his federal employer."  *Fitzgerald v.*

*Sec'y, U.S. Dep't of Veterans Affairs*, 121 F.3d 203, 206 (5th Cir. 1997) (citing *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 832-833 (1976); *Francis v. Brown*, 58 F.3d 191, 192 (5th Cir. 1995)).

### 1.      Termination

Defendant moves for summary judgment on Plaintiff's termination claims on the grounds that she failed to exhaust her administrative remedies by complaining to an EEOC counselor within 45 days of her removal.  (Def. Reply Br. at 4.)  Plaintiff responds that she properly challenged her removal from employment before the MSPB.  (Pl. Surreply Br. at 7.)

The MSPB has jurisdiction over specific adverse employment actions affecting federal employees, including terminations, demotions, and suspensions.  *See Chappell v. Chao*, 388 F.3d 1373, 1375 (11th Cir. 2004) (citing 5 U.S.C. § 7512). A federal employee who is terminated and also alleges discrimination in violation of Title VII presents a so-called "mixed case" that may be appealed directly to the MSPB.  *See* 5 U.S.C. § 7702(a)(1)(B)(I).  "Although the MSPB does not have jurisdiction over discrimination claims that are not related to adverse actions, it can entertain appeals in 'mixed cases,' where an employee alleges a Title VII violation in relation to one of the specified adverse employment actions."  *Chappell*, 388 F.3d at 1375 (citing 5 U.S.C. § 7702;  29 C.F.R. § 1614.302; *Sloan v. West*, 140 F.3d 1255, 1259 (9th Cir. 1998)).  "Federal employees with Title VII claims that are not mixed with adverse actions within the MSPB's jurisdiction must file an initial complaint with their agency EEO to pursue their claims."  *Chappell*, 388 F.3d at 1375 n.2.

In *Butler v. West*, the D.C. Circuit outlined the statutory and regulatory framework governing mixed case MSPB appeals:

> An employee who intends to pursue a mixed case has several paths available to her. At the outset, the aggrieved party can choose between filing a "mixed case complaint" with her agency's EEO office and filing a "mixed case appeal" directly with the MSPB.  *See* 29 C.F.R. § 1614.302(b).  By statute, the relevant agency EEO

office and the MSPB can and must address both the discrimination claim and the appealable personnel action.  *See* 5 U.S.C. § 7702(a)

When a complainant appeals to the MSPB...the matter is assigned to an Administrative Judge who takes evidence and eventually makes findings of fact and conclusions of law.  *See* 5 C.F.R. §§ 1201.41(b), 1201.111.  The AJ's initial decision becomes a final decision if neither party, nor the MSPB on its own motion, seeks further review within thirty-five days.  *See* 5 C.F.R. § 1201.113.  However, both the complainant and the agency can petition the full Board to review an initial decision.  Should the Board deny the petition for review, the initial decision becomes final, *see* 5 C.F.R. § 1201.113(b); if the Board grants the petition, its decision is final when issued.  *See* 5 C.F.R. § 1201.113(c).  At this point, the complainant again has a choice: within thirty days of receiving a final decision from the MSPB, she can either appeal the discrimination claim to the EEOC, *see* 5 C.F.R. § 1201.157, or appeal the entire claim (or any parts thereof) to the appropriate district court.  *See* 5 U.S.C. § 7703(b), 5 C.F.R. § 1201.175, 29 C.F.R. § 1614.310(b).  Finally, if the MSPB fails to render a judicially reviewable decision within 120 days from the filing of a mixed case appeal, the aggrieved party can pursue her claim in federal district court.  *See* 5 U.S.C. § 7702(e)(1)(B).

164 F.3d 634, 638-39 (D.C. Cir. 1999).  "[S]ection 7702(e)(1)(B) explicitly sanctions a civil action in the federal district courts once 120 days have passed without final decision from the MSPB."  *Id.* at 643.  "[A]lthough the MSPB does not lose its jurisdiction when 120 days elapse without a final decision, the appropriate federal district court can take jurisdiction as well."[2]  *Id.* at 642.

In this case, because Plaintiff is a federal employee asserting that she was terminated in violation of Title VII, she presents a "mixed case" that may be appealed directly to the MSPB.  Thus, her failure to complain to an EEOC counselor regarding her termination is not fatal to her Title VII termination claims if she can demonstrate that she exhausted remedies as to those claims through the MSPB process.

Plaintiff was informed by letter that her removal from federal service was effective as of March 23, 2001, and that she had 30 days from that date to file an appeal with the MSPB.  (Def.

---

[2]The *Butler* court rejected the defendant's argument that a literal reading of the statute creates an absurd result by allowing a complainant to simultaneously pursue a claim in the administrative and court systems.  164 F.3d at 644.

MSJ App., Exh. 1 at 15.)  Plaintiff has presented no evidence that she in fact filed her appeal within

30 days of March 23, 2001.  Rather, she states that she challenged her removal from employment

"before the United States Merit Systems Protection Board from on or about April 26, 2001 to April

30, 2004," and that "[t]hose claims became ripe on April 30, 2004."  (Pl. Surreply Br. at 7.)  In

support of these contentions, Plaintiff refers the Court to Tab 6 of her Appendix, which contains

the first three pages of the first volume of a transcript of a hearing on Plaintiff's MSPB appeal, held

July 8, 2002. (Pl. Surreply App., Exh. 6 at 24-27.)  Tab 6 also contains the MSPB's *Final Order*,

dated April 30, 2004, denying Plaintiff's request for a reconsideration of the administrative judge's

decision.  *Id*. at 27-30(A).  No other documents are contained in Tab 6, and no documents related

to Plaintiff's MSPB appeal are included elsewhere in the appendix.

Because Plaintiff must have appealed her termination to the MSPB in order to receive the

July 8, 2002 hearing, it is apparent that the instant action, filed September 26, 2003, was brought

more than 120 days after she filed her appeal, and prior to the receipt of the April 30, 2004 final

decision.  Further, Defendant does not challenge the timeliness of Plaintiff's MSPB appeal.

Plaintiff therefore appears to have complied with the exhaustion requirements for filing a lawsuit

based on an MSPB appeal.  *See Sorrels v. Veterans Admin*., 576 F. Supp. 1254, 1261 (D.C. Ohio

1983) (concluding that plaintiff exhausted his administrative remedies where, although he presented

no evidence that his appeal was timely filed, he submitted evidence that the MSPB held a hearing

and that more than 120 days had passed without a final decision prior to plaintiff's filing of his

suit).

Other than the claims based on her removal, Plaintiff has not specifically identified any

other alleged discriminatory or retaliatory actions within the jurisdiction of the MSPB, such as

demotions or suspensions.  Accordingly, the Court now turns to the administrative exhaustion requirements governing Plaintiff's remaining Title VII claims.

### 2.    *Transfer and PAR Claims*

Defendant moves for summary judgment on Plaintiff's pre-2001 claims on grounds that she failed to exhaust her administrative remedies by contacting an EEOC counselor within 45 days of her transfer to McAllen in 1992; her failure to receive PARs in 1992 and in 1996; her failure to receive adequate PARs; and her transfer to the Civil Division in 1996.  (Def. Reply Br. at 2.) Plaintiff concedes that she did not file EEOC complaints with respect to those actions, or any other actions encompassed within the broad allegations of discrimination and retaliation in her second amended complaint.  However, she contends that she should not have been required to do so.  (Pl. Surreply Br. at 4.)  She also asserts that she filed three EEOC complaints with respect to her pay, office space, and failure to receive a promotion–claims she did not mention specifically in her second amended complaint or response.[3]  (Pl. Surreply Br. at 3.)

The Code of Federal Regulations ("Code") establishes the procedures governing the administrative processing of Title VII claims against the federal government.  *See* 29 C.F.R. §§ 1614.101-110.  The Code requires that aggrieved federal employees initiate contact with an agency counselor for pre-complaint counseling within 45 days of the alleged discriminatory action.  29 C.F.R. § 1614.105(a).  Within 30 days of the date the employee initiated contact with the counselor, the counselor must conduct a final interview with the employee.  29 C.F.R. § 1614.105(d).  If the EEOC counselor is unable to resolve the matter informally, the counselor must notify the employee

---

[3]Plaintiff presents evidence that she did file EEOC complaints with respect to her pay, office space, and failure to promote claims, and Defendant concedes that she filed these complaints.  (Def. Reply Br. at 3.)

of his right to file a formal administrative complaint with the employing agency.  *See id.*  An

employee who chooses to file a formal complaint must do so within 15 calendar days of receiving

notice of the right to file a complaint.  29 C.F.R. § 1614.106(b).  After filing this complaint, an

employee is authorized to file an action in district court within 90 days of receiving a final agency

action on the complaint or, if the employee appeals the EEOC's action on the complaint, within

90 days of receiving the EEOC's final decision on the appeal.[4]  29 C.F.R. § 1614.407.

Plaintiff does not assert, nor has she presented evidence, that she filed timely EEOC

complaints with respect to any of the claims she specifically enumerates in her response, including

her claims about her transfer to McAllen; her failure to receive PARs in 1992 and 1996; her failure

to receive accurate PARs, and her transfer to the Civil Division.  Plaintiff has neither asserted nor

presented evidence of exhaustion as to any of the additional but unspecified Title VII claims she

may be asserting, as set forth in her second amended complaint in the form of broad, general

allegations of discriminatory and retaliatory actions between 1992 and the present.  *Id*.  In fact,

Plaintiff concedes in her surreply that she exhausted administrative remedies only as to the claims

contained in the three EEOC complaints regarding her pay, office space, and failure to receive a

promotion, and her MSPB appeal of her termination.  She appears to argue, however, that all of her

other claims of discrimination and retaliation should not be barred for failure to exhaust

administrative remedies.  (Pl. Surreply Br. at 3, 5.)  She asserts that she "should not be required,

in law or in equity, to exhaust administrative remedies that Defendant controlled and never did

afford, or would have afforded, to Plaintiff."  *Id*. at 4.  Plaintiff does not state how this should affect

---

[4]An employee is also authorized to file suit if the EEOC fails to issue a final agency action on a complaint, or render a final decision on an appeal, within 180 days of receipt of the complaint or appeal.  29 C.F.R. § 1614.407.

the Court's analysis of her claims, but it appears that she is asserting a claim for equitable relief from the requirement that she have exhausted administrative remedies as to all her claims prior to bringing suit. Plaintiff cites no authority for her contention.

### a.     Equitable Relief from Exhaustion

"The procedural requirements governing a plaintiff's right to bring a Title VII claim in court are not unimportant." *Velikonja v. Mueller*, 315 F. Supp. 2d. 66, 71 (D.D.C. 2004). The Supreme Court has stated that Congress designed Title VII with the goal of eliminating discrimination in the federal civil service by providing "a careful blend of administrative and judicial enforcement powers." *Brown*, 425 U.S. at 833. The regulatory scheme provides an opportunity for agencies to resolve discrimination complaints informally by means of conciliation, conference, and persuasion. *Wrenn v. Sec'y, Dep't of Veterans Affairs*, 918 F.2d 1073, 1078 (2d Cir. 1990) (citations omitted). Such a scheme reflects a balancing between the right of employees to nondiscriminatory treatment, and the avoidance of costs associated with litigation. *Waiters v. Parsons*, 729 F.2d 233, 237 n.9 (3d Cir. 1984). Giving federal agencies an opportunity to handle matters internally whenever possible also helps ensure that the federal courts are burdened only when reasonably necessary. *Velikonja*, 315 F. Supp. 2d. at 71 (citing *Brown v. Marsh*, 777 F.2d 8, 14 (D.C. Cir. 1985)).

Notwithstanding the important role that administrative procedures play in addressing allegations of discrimination by federal employees, the administrative exhaustion requirement may under limited circumstances be subject to waiver, estoppel, and equitable tolling.[5] *See Zipes v.*

---

[5]The Court notes that the terms "estoppel" and "tolling" are often used interchangeably, even though the terms refer to distinct doctrines. Estoppel relates to situations in which the defendant's misconduct prevented the plaintiff from complying with a deadline, while tolling focuses on whether the plaintiff acted with reasonable prudence. *See Baker v. Peters*, 145 F. Supp. 2d 1251, 1257 (M.D. Ala. 2000) (citing *Cocke v. Merrill Lynch & Co.*, 817 F.2d 1559, 1561 (11th Cir. 1987)). The distinction is not essential to the resolution of this case.

*Trans World Airlines, Inc.*, 455 U.S. 385, 392 (1982) ("[F]iling a timely charge of discrimination with the EEOC is...a requirement...subject to waiver, estoppel, and equitable tolling."); *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95-96 (1990) (equitable tolling applies to the statutory filing deadline in a federal employee's Title VII action); *Waiters*, 729 F. 2d at 236 (stating that *Zipes* requires courts to consider whether the doctrines of waiver, estoppel, or tolling apply when a plaintiff fails to file a formal complaint). Holding that filing requirements in discrimination cases are subject to waiver and equitable tolling "honor[s] the remedial purpose of the legislation as a whole without negating the particular purpose of the filing requirement, to give prompt notice to the employer." *Zipes*, 455 U.S. at 398.

Although available to Title VII claimants who fail to exhaust administrative remedies, "equitable doctrines are 'to be applied sparingly.'" *Ramirez v. City of San Antonio*, 312 F.3d 178, 183 (5th Cir. 2002) (quoting *Nat'l RR Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)). "Courts grant requests for equitable tolling most frequently where 'the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights.'" *Teemac v. Henderson*, 298 F.3d 452, 457 (5th Cir. 2002) (quoting *United States v. Patterson*, 211 F.3d 927, 930 (5th Cir. 2000)). In addition, "equitable tolling may apply where the claimant has vigorously pursued his action, but has missed deadlines due to his or her lack of sophistication with the procedural requirements of Title VII claims." *Rowe v. Sullivan*, 967 F.2d 186, 192 (5th Cir. 1992).

None of these circumstances appear to apply to Plaintiff's situation. While she alleges that the "DOJ did not timely appoint an EEO counselor to Plaintiff[,]" she has not alleged that the DOJ's failure to do so affected her ability to file a timely complaint. (Pl. Surreply Br. at 3.) She

does not allege that Defendant actively misled her or deliberately prevented her from filing a complaint.  She has not alleged that despite exercising due diligence, a lack of sophistication prevented her from fulfilling the procedural requirements of the administrative process.  Plaintiff had been through the EEOC process before, and thus had familiarity with the procedural requirements associated with filing a complaint.  In addition, Plaintiff herself is a practicing attorney licensed by the State of Texas since 1986, and she was represented by counsel during the pendency of her EEOC proceedings.  Under such circumstances, extending equitable relief is not appropriate.  *See English v. Freeh*, 1994 WL 160487, at *3 (E.D. La. Apr. 22, 1994) (declining to extend equitable relief for failure to file an EEOC complaint where plaintiff himself was an attorney, and had been represented by other attorneys in the proper filing of previous EEOC complaints).

Furthermore, dissatisfaction with the DOJ's handling of the previous complaints does not excuse Plaintiff's failure to exhaust administrative remedies as to each alleged instance of discrimination.  Congress created a remedy for federal employees dissatisfied with the agency's handling of their EEOC complaints by authorizing them to file suit in federal court requesting de novo review of their discrimination claims after a specified time.  *See* 42 U.S.C. § 2000e-16(c) ("an employee...if aggrieved by the final disposition of [the] complaint, or by the failure to take final action on [the] complaint...may file a civil action..."); *Zusmer v. Richardson*, 211 F.3d 1276, 2000 WL 219745, at *1 (9th Cir. Feb. 24, 2000) ("A dissatisfied employee may remove an EEO claim to federal court at several points during the administrative process if there is agency inaction, dismissal of the charge or unsatisfactory resolution of the charge.") (citations omitted)*; Mayes v. Potter*, 2003 WL 23220738, at *5 (W.D. Mich. May 22, 2003) ("Plaintiff's remedy, when he was

unhappy with the processing of his administrative claim, was to file a lawsuit challenging the agency's decision."). Accordingly, Plaintiff has failed to demonstrate that equitable relief is warranted for her failure to exhaust administrative remedies.

### b.     Exhaustion of Post-Charge Retaliation Claims

With respect to Plaintiff's other retaliation claims, the Court notes that plaintiffs are not required to exhaust administrative remedies under narrow circumstances. "[R]etaliation that occurs as [a] result of filing an EEOC charge can be included in a Title VII case in district court without filing a new charge." *Perez*, 154 F. Supp. 2d at 938 (citing *Gupta v. E. Tex. State Univ.*, 654 F.2d 411, 414 (5th Cir. 1981)). However, "retaliation claims arising prior to the filing of an EEOC charge may only be included [in the Title VII case] if mentioned in the original charge." *Perez*, 154 F. Supp. 2d at 938 (citing *McCray v. DPC Indus., Inc.*, 942 F. Supp. 288, 294-95 (E.D. Tex. 1996)). A retaliation claim arising prior to the filing of an EEOC charge, but not mentioned in the charge, is subject to dismissal for failure to exhaust administrative remedies. *Perez*, 154 F. Supp. at 938; *Musgrove v. Mobil Bus. Res. Corp.*, 1999 WL 1080931, at *6 (N.D. Tex. Nov. 29, 1999).

In her complaint, response, and surreply, Plaintiff has not identified any specific acts of retaliation that allegedly occurred as a result of her filing EEOC complaints on June 9, 1998, October 1, 1998, and February 23, 1999, other than those mentioned within those EEOC complaints themselves, or her termination in March 2001. (Resp. at 6.) Accordingly, none of her other retaliation claims fall within the narrow exception to exhaustion, and therefore are barred.

In sum, Plaintiff has also failed to demonstrate that equitable relief is warranted for her failure to exhaust her transfer and PAR claims, or that her other retaliation claims need not be exhausted because they arose after she filed an EEOC complaint but prior to her filing of the instant

17

action.   Accordingly, summary judgment for Defendant on grounds of failure to exhaust administrative remedies is appropriate with respect to those discrimination and retaliation claims Plaintiff lists in her response, including her transfer in 1992, her transfer to the Civil Division, and the claims related to her PARs, for which she did not file an MSPB appeal or an EEOC complaint. *See Anderson v. City of Dallas*, 116 Fed. Appx. 19, 25 (5th Cir. 2004) (per curiam) (finding that summary judgment for the defendant on  plaintiff's discrimination and retaliation claims was appropriate due to plaintiff's failure to demonstrate that she had filed EEOC charges and exhausted administrative remedies with respect to those claims).   Summary judgment is also appropriate for Defendant on any of Plaintiff's additional but unidentified Title VII claims, as set forth in her second amended complaint in the form of broad, general allegations of discriminatory and retaliatory actions between 1992 and the present.   *Id.*

The Court now turns to the merits of Plaintiff's Title VII claims included in her MSPB appeal and EEOC complaints.

**B.**     **Title VII Framework**

Title VII's burden-shifting paradigm is well-established.   "First, the plaintiff must establish by a preponderance of the evidence a prima facie case of discrimination." *Nichols v. Lewis Grocer*, 138 F.3d 563, 566 (5th Cir. 1998).   A plaintiff may establish a prima facie case of sex discrimination through either direct evidence, statistical proof, or the framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).   *Urbano v. Cont'l Airlines, Inc*., 138 F.3d 204, 206 (5th Cir. 1998).   In the instant action, Plaintiff has not presented direct or statistical evidence of sex discrimination or retaliation as to any of her claims. Accordingly, the Court will apply the framework set forth in *McDonnell Douglas,* as applicable to

each of Plaintiff's particular Title VII claims, in determining whether she has established a prima facie case with respect to those claims.[6]

If the plaintiff makes a prima facie case, "the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the challenged employment action." *Id.* "Once the defendant meets this burden of production, the plaintiff must demonstrate that the proffered explanation is not the actual reason for its decision, but is instead a pretext for discrimination." *Id*. "An employer's reason cannot be shown to be a 'pretext for discrimination' unless the plaintiff introduces some evidence, whether circumstantial or direct, that permits the jury to believe that the reason was false and that illegal discrimination was the actual reason." *Id*. This burden-shifting paradigm also applies to claims for retaliation under Title VII. *Mato v. Baldauf*, 267 F.3d 444, 452 (5th Cir. 2001).

Although Defendant has not specifically addressed Plaintiff's discrimination and retaliation claims with respect to her pay, office space, and failure to receive a promotion, Defendant argues that Plaintiff has failed to produce evidence establishing a prima facie case with respect to all of her Title VII claims. (Pl. MSJ Br. at 5-7.) Because Defendant will not have the burden at trial concerning the elements of Plaintiff's prima facie case, Defendant can meet its summary judgment obligation by pointing the court to the absence of evidence to support Plaintiff's case. *See Keeley v. Cisco Sys.*, 2003 WL 21919771, at *3 (N.D. Tex. Aug. 8, 2003) (noting that although the defendant did not explicitly argue that plaintiff had failed to establish a prima facie case, the defendant had satisfied its summary judgment burden by pointing to the absence of evidence to

---

[6]The *McDonnell Douglas* framework varies slightly as applied to different types of discriminatory action a plaintiff alleges. The Court will set forth the applicable framework below as part of the discussion of each particular discriminatory action alleged.

19

support one prong of the prima facie case) (citing *Celotex Corp.*, 477 U.S. at 325 (1986)).  Once

Defendant does so, Plaintiff must go beyond her pleadings and designate specific facts showing

there is a genuine issue for trial.  *See Keeley*, 2003 WL 21919771, at *3 (citing *Celotex Corp.*, 477

U.S. at 325 (1986); *Little*, 37 F.3d at 1075)).   "Summary judgment is mandatory when the

nonmoving party fails to meet this burden."  *Keeley*, 2003 WL 21919771, at *3 (citing *Little*, 37 F.3d

at 1076).

## C.   Plaintiff's Discrimination Claims

### 1.   *Termination*

Applying the *McDonnell Douglas* framework to Plaintiff's termination claim, she must make

a prima facie showing "'that she (1) is a member of a protected class; (2) was qualified for her

position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside

the protected class,' or, in the case of disparate treatment, shows 'that others similarly situated were

treated more favorably.'"  *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 513 (5th

Cir. 2001) (quoting *Shackleford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999))

(other citations omitted).  Plaintiff has provided evidence of the first three prongs: she is a woman,

a licensed attorney, and was terminated from employment.  With respect to the fourth prong,

Plaintiff has not identified evidence in the record showing that she was replaced by someone outside

the protected class, or, in the alternative, that others similarly situated were treated more favorably.

Thus, Plaintiff has failed to show a genuine issue of material fact concerning the existence of a

prima facie case of discrimination.  However, even if the Court assumes for purposes of this motion

that she has satisfied the prima facie case, as discussed below, Plaintiff's claim would still fail on

the issue of pretext.

### a.      *Legitimate Nondiscriminatory Reason*

Defendant asserts that Plaintiff was terminated because of her insubordination, disrespectful conduct, failure to carry out work assignments, and disruptive conduct.  (Def. Reply Br. at 7, n.3.) In support of this assertion, Defendant points to a sixteen-page letter from the Office of the Director of the Executive Office for United States Attorneys.  (Def. MSJ App., Exh. 1 at 1-16.)  In that letter, Louis DeFalaise, Senior Counsel to the Director, addresses each charge leveled by United States Attorney Mervyn Mosbacher in proposing Plaintiff's removal.  *Id.*  DeFalaise states that after considering the evidence, including Plaintiff's written response and oral reply, he found that she had committed the following infractions: (1) failure to follow a direct order; (2) disrespectful conduct; and (3) disruptive conduct.[7]  *Id.* at 1.  Defendant has therefore met its burden of production to provide a legitimate, nondiscriminatory reason for terminating Plaintiff.  Because Defendant has met its burden, Plaintiff must raise a genuine issue of material fact that Defendant discriminated against her, either by showing that Defendant's proffered reasons are a pretext for discrimination or by providing direct evidence of discrimination.  *See Okoye,* 245 F.3d at 413 (citing *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 449 (5th Cir. 1996)); *Hall v. Gillman Inc.*, 81 F.3d 35, 37 (5th Cir. 1996).

### b.      *Pretext or Intentional Discrimination*

"An employer's reason cannot be shown to be a 'pretext for discrimination' unless the plaintiff introduces some evidence, whether circumstantial or direct, that permits the jury to believe that the reason was false and that illegal discrimination was the actual reason."  *Nichols v. Lewis Grocer*, 138 F.3d 563, 566; *see also Blow v. City of San Antonio, Tex.*, 236 F.3d 293, 297 (5th Cir.

---

[7]DeFalaise stated that the charge of insubordination merged with that of failure to follow a direct order, because the charges were based on the same set of facts.  (Def. MSJ App., Exh. 1 at 2.)  He merged the charge of failure to carry out work assignments with one of the charges that she failed to follow an order given by her supervisor.  *Id.* at 5, 9.

2001) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000) (holding that such evidence may be circumstantial)).  Whether direct or circumstantial, "the evidence offered to counter the employer's proffered reasons must be substantial."  *Nichols*, 138 F.3d at 566.

Plaintiff appears to contend that Defendant's stated reasons for terminating her are a pretext for discrimination because she asserts that other male employees were not removed for engaging in similar acts of misconduct.  To establish pretext by showing disparate treatment, a plaintiff must show that the employer gave preferential treatment to an employee outside the protected class under "nearly identical" circumstances.  *Little v. Republic Refining Co.*, 924 F.2d 93, 97 (5th Cir. 1991) (quoting *Smith v. Wal-Mart Stores*, 981 F.2d 1177, 1180 (5th Cir. 1990); citing *Davin v. Delta Airlines*, 678 F.2d 567, 570-71 (5th Cir. Unit B 1982)).  That is, the plaintiff must show that the misconduct for which she was discharged was nearly identical to that engaged in by a male employee whom [the defendant] retained."  *Smith*, 981 F.2d at 1180 (citing *Davin*, 678 F.2d at 570).

Plaintiff appears to assert that other male AUSAs were retained despite committing the same acts of misconduct for which she was removed.  She argues that she: "is accused of violating an order.  The male employees whom the Plaintiff identified in her initial brief violated an order.  The Plaintiff allegedly violated the same 'company policy' as the male employees whom she identified violated.  That policy is to obey orders."  (Pl. Surreply Br. at 6.)  In support of this contention, Plaintiff refers the Court generally to the following documents: (1) Complainant's Response to the Agency's Motion for Decision Without a Hearing; (2) Complainant's Response to the Agency's Third Motion in Limine, and (3) Complainant's Response to the Agency's Fourth Motion and Fifth Motions in Limine.  *Id*. at 5-6.

A review of Plaintiff's response reveals that it does not, as Plaintiff contends, specifically

22

list any male employees by name.  In an affidavit she submitted with her response, however, she does identify some male employees and acts of misconduct allegedly committed by those employees.  (Pl. Resp. Br., Exh. 2 at 153.)  For example, she alleges that "AUSA Robert Berg, the male supervisors of Robert Berg, AUSA Kenneth Cusick, and AUSA Timothy Hammer did not follow the DOJ's explicit orders to report fraud, waste, abuse and gross mismanagement."[8]  *Id.*  Plaintiff has failed to produce any evidence that she was similarly situated to these or any of the other male employees she identified.  *See Okoye*, 245 F.3d at 515 (stating that plaintiff failed to demonstrate disparate treatment by citing to employees who allegedly committed acts of misconduct, because she had not produced evidence that those employees were similarly situated to her).  Furthermore, while she has alleged that a number of different employees committed a variety of acts of misconduct, she has not alleged that any employees committed all three of the types of misconduct for which she was removed, including failure to follow a direct order, disrespectful conduct, and disruptive conduct.[9]  Accordingly, even if Plaintiff could demonstrate that

---

[8]Defendant argues that this and other statements made by Plaintiff in her affidavit regarding alleged misconduct of other male employees are conclusory assertions and do not constitute competent summary judgment evidence.  (Def. Reply Br. at 6, n.2.)  Plaintiff does not state that she observed those individuals discovering fraud, waste, abuse, or gross mismanagement and then failing to report it, nor does she identify supporting evidence in the record that those individuals violated the DOJ's orders.  Plaintiff's statement that other AUSAs committed acts of misconduct appear to be conclusory and speculative rather than based on her personal knowledge.  Speculative or conclusory allegations are incompetent summary judgment evidence.  *See Savariego v. Melman*, 2002 WL 1788012, at *2 n.4 (N.D. Tex. May 10, 2002) (citing *Lujan*, 497 U.S. at 888) (finding that unauthenticated hearsay in an affidavit did not constitute competent summary judgment evidence).  Because Plaintiff 's allegations that Berg, Cusick, and Hammer failed to follow an order is without support in the record, the Court could strike this statement from the summary judgment evidence.  *See Strain*, 23 F. Supp. 2d 685, 696 (N.D. Tex. 1998) (striking statements as "self-serving and recount[ing] alleged occurrences of which Plaintiffs have no personal knowledge in violation of FED. R. CIV. P. 56(e).").  Even if the Court considers these allegations, Plaintiff has failed, for the reasons set forth in section III.C.1.b., to create a genuine issue of material fact as to pretext.

[9]A review of the appendix to Plaintiff's reply brief reveals that Plaintiff alleges that her peers and supervisors committed other acts of misconduct without being terminated.  Those allegations include: (1) AUSA Michael McCormick, a supervisor, did not follow DOJ orders not to violate the law when he assaulted Plaintiff; (2) Mirsky, also a supervisor, did not follow DOJ orders not to violate the law when he forged his wife's name on documents in 1995 and 1999 to withdraw money from a Thrift Savings Plan; (3) Mirsky and his male supervisors did not follow

she were similarly situated to these employees, she cannot demonstrate that her situation was nearly identical to theirs. *See id.* (finding that plaintiff failed to demonstrate that her situation was nearly identical to that of other employees because they were not accused of the same act of misconduct that led to plaintiff's termination) (citing *Little*, 924 F.2d at 97 (finding that circumstances were not nearly identical where employees actions were reviewed by different supervisors); *Smith*, 891 F.2d at 1180 (finding that employees who committed different violations of company policy were not nearly identical); *Davin*, 678 F.2d at 571 (finding that acts of misconduct were not so similar that employer was compelled to treat employees equally)).

Where the plaintiff has offered no evidence to rebut the employer's facially benign explanations, no inference of discrimination can be drawn. *See EEOC v. La. Office of Cmty. Servs.*, 47 F.3d 1438, 1447-1448 (5th Cir. 1995) (explaining that a plaintiff must tender factual evidence from which a fact-finder could reasonably conclude that the defendant's reasons were pretext for discrimination). Consequently, Plaintiff has failed to show a genuine issue of material fact regarding pretext, and Defendant is entitled to summary judgment on this claim.[10]

---

explicit policies and procedures of the FLU; (4) none of the male prosecutors followed the USAO's policies and procedures concerning the collection of special assessments, restitution, and fines; and (5) her male supervisors were disrespectful to her. (Exh. 2 at 153.) To the extent that the first four allegations are not based on Plaintiff's personal knowledge, they do not constitute competent summary judgment evidence. *See Savariego*, 2002 WL 1788012, at *2 n.4; *Strain*, 23 F. Supp. 2d at 696. Even if the Court considers these allegations, Plaintiff has failed, for the reasons set forth in section III.C.1.b., to create a genuine issue of material fact as to pretext.

[10]In addition, Plaintiff admits to engaging in some of the conduct for which she was discharged in an affidavit attached to her response. In that affidavit, which is approximately 140 pages, Plaintiff addressed each of the allegations the DOJ raised in removing her. (Pl. Resp. App., Exh. 1; Exh. 2 at 152.) "[W]hen a plaintiff admits to engaging in the conduct that resulted in the adverse employment action, the plaintiff's burden in establishing pretext 'becomes quite difficult.'" *Felts v. Combined Ins. Co. of Am.*, 2000 WL 21317, at *3 n.2 (N.D. Tex. Jan. 11, 2000) (citing *Chaney v. New Orleans Pub. Facility Mgmt. Inc.*, 179 F.3d 164, 168 (5th Cir. 1999)). Plaintiff has admitted, for example, that she accused a supervisor of lying to her in an email; for this reason, DeFalaise sustained a charge that Plaintiff engaged in disrespectful conduct by making this accusation. (Pl. MSJ App., Exh. 1 at 9; Pl. Resp. App., Exh. 1 at 116-117.) Plaintiff also acknowledges that she failed to follow direct orders in that she admits to having sent an email to a supervisor regarding an issue related to an office dispute, after receiving an order from him to stop sending emails related to that matter. (Def. MSJ App., Exh. 1 at 4; Pl. Resp. App., Exh. 1 at 49-50.)

## 2.   *Level of Compensation*

On September 11, 1998, Plaintiff filed an EEOC complaint asserting that "I am being paid less than other AUSAs in the district because of my. . .gender[.]"[11] (Pl. Surreply App., Exh. 1 at 2.) Plaintiff does not specifically address this claim in her pleadings.

Applying the *McDonnell Douglas* framework to this claim, Plaintiff must make a prima facie showing that she occupies a job similar to that of higher paid workers of the opposite sex. *Montgomery v. Clayton Homes, Inc.*, 65 Fed. Appx. 508, 2003 WL 1922917, at *1 (5th Cir. 2003) (per curiam) (citing *Lenihan v. Boeing Co.*, 994 F. Supp. 776, 798 (S.D. Tex. 1998)).  Title VII prohibits discrimination in compensation based on an individual's sex.  To make this showing, the plaintiff must present evidence showing that the job content and actual job requirements are identical to those of an individual outside the protected class.  *Montgomery v. Clayton Homes, Inc.*, 2003 WL 1922917, at *2 (citing *E.E.O.C. v. Hernando Bank, Inc.*, 724 F.2d 1188, 1196 (5th Cir. 1984)).  The plaintiff at all times carries the burden of persuading the trier of fact that the pay disparity is due to the employer's intentional sex discrimination.  *Lenihan*, 994 F. Supp. at 799.

Without specifically referring to her disparate pay claim, Plaintiff states in her response that she will "introduce evidence that there were male employees who were similarly situated to her and were treated more favorably."  (Resp. at 3.)  She points the Court generally to the affidavits filed with her response.  A review of those affidavits reveals that they fail to identify similarly situated male employees, or provide evidence establishing that Plaintiff's position and job duties were the same as those of the male employees.

---

[11]In her EEOC complaint，Plaintiff also asserted claims of discrimination based on race, age, and national origin.  (Pl. Surreply App., Exh. 1 at 2.)  However, in her *Second Amended Complaint,* she limits her claim to discrimination on the basis of sex.  (Second Am. Compl. at 2, ¶¶ 1-2.)

Plaintiff also does not specifically address her disparate pay claim in her surreply. However, one of the attachments submitted with her surreply references this claim. In that attachment, *Complainant's Response to the Agency's Motion for Decision Without a Hearing*, dated November 2, 2001, Plaintiff's counsel during her EEOC administrative proceedings states in a section entitled "Arguments and Authorities" that nine male, non-supervisory AUSAs with less experience than Plaintiff received between $10,700 and $14,500 more than Plaintiff in basic annual salary.[12] (Pl. Surreply App., Exh. 17 at 125, ¶ 31.) That paragraph refers to an appendix that Plaintiff did not include in her own appendix. Plaintiff's counsel also asserts in that document that those male AUSAs are similarly situated to her, but does not refer to any appendix.[13] *Id*. at ¶ 32. Plaintiff's appendix provides no evidentiary support for her counsel's assertions, nor does she provide a basis for her belief such as personal knowledge. Thus, the only support Plaintiff offers is her subjective belief or speculation that her salary was lower than that of male AUSAs; such support is insufficient

---

[12]Plaintiff's counsel wrote in *Complainant's Motion to the Agency's Motion for Decision Without a Hearing* that:

> The facts show that the complainant was subjected to illegal discrimination and retaliation when her basic annual salary was established in 1998, 1999, and 2000. Other non-supervisory AUSA's in the SDTX, who had less experience than the complainant, have been paid far more tha[n] the complainant for years. Some of the non-supervisory AUSA's who were paid more than the complainant include [Plaintiff lists 9 individuals]. All of these AUSA's are male...All of them except [one individual] also have less experience with the agency than the complainant...By May 2000, all of the other AUSA's except for Mr. Morgan were being paid the highest basic annual salary allowed by law. This means that they were each making $14,500 more than the complainant in basic annual salary. Mr. Morgan was making $10,700 more than the complainant.

(Pl. Surreply App., Exh. 17 at 125, ¶ 31.)

[13]In the *Complainant's Response to the Agency's Motion for Decision Without a Hearing*, Plaintiff's counsel asserted:

> These AUSA's are similarly situated to the complainant because the relevant aspects of their jobs were substantially the same as the complainant's. They all work for the USA and the USA sets their basic annual salary. They are all attorneys who perform legal work as it was assigned to them by the USA. They all received their law degrees between 1984 and 1987, except for Mr. Guerra and Mr. Hammer. Those two received their degrees earlier, but they have the same or less experience with the agency than the complainant. All non-supervisory AUSA's in the SDTX also have the same or substantially the same annual Performance Work Plans.

(Pl. Surreply App., Exh. 17, at 125, ¶ 32.)

26

to create a genuine issue of material fact.  *See Nichols v. Loral Vought Sys. Corp.*, 81 F3d 38, 42 (5th

Cir. 1996) (explaining that summary judgment evidence must be more than mere subjective beliefs

or speculation).  Plaintiff therefore has failed to point to evidence raising a genuine question of fact

that Defendant treated her differently from similarly situated male employees.   *See Gazda v.

Pioneer Chlor Alkali Co.,* 10 F. Supp. 2d. 656, 669 (S.D. Tex. 1997) (finding that plaintiff failed to

raise a genuine question of fact regarding her disparate pay claim where she failed to produce

evidence establishing that her position and associated duties were the same as those of the male

employees she compared herself to) (citing *Tonka v. Sealer Corp.*, 66 F.3d 1295, 1313 (2d Cir.

1995); *Lloyd v. Phillips Bros., Inc.*, 25 F.3d 518, 525 (7th Cir. 1994)).   Accordingly, because

Plaintiff has failed to establish a prima facie case of discrimination with respect to her disparate pay

claim, Defendant is entitled to summary judgment on this claim.

### 3.      *Less Desirable Office Space*

On December 17, 1998, Plaintiff filed a complaint asserting that "[n]ew offices in the

McAllen Division are being assigned in an arbitrary manner.  I have been given a less desirable

office because of my gender[.]"[14]  (Pl. Surreply App., Exh. 2 at 8.)  Plaintiff did not address this

claim in her pleadings, but provides some detail in one of her affidavits regarding why she felt that

her office space was less desirable.  (Pl. Resp. App., Exh. 1 at 30-37.)  In that affidavit, Plaintiff

explains that when the USAO in McAllen moved to a different floor, she was given a choice

between two offices among three designated for Civil Division attorneys on the west end of the

floor.  *Id.* at 30-31.  Those two offices, she states, "were the greatest distance away from amenities

---

[14]In her EEOC complaint,  Plaintiff also asserted claims of discrimination based on race, age, and national
origin.  (Pl. Surreply App., Exh. 2 at 8.)  However, in her *Second Amended Complaint,* she limits her claim to
discrimination on the basis of sex.  (Second Am. Compl. at 2, ¶¶ 1-2.)

such as the USAO's library and the Civil Division's conference room, legal secretary, photocopier, facsimile machine, and printer" and were the most isolated in the USAO. *Id.* at 31. She also complains that a computer specialist was later moved into the office next to hers when other offices were available, and that the telephone conversations of that employee could be heard clearly in Plaintiff's office and disturbed her work. *Id.* at 35-36. Furthermore, she asserts that she and the employee were in a vulnerable and unsafe area because of its proximity to a room in which defense attorneys could meet with prisoners. *Id.* at 35-36.

Under the rigorous standard of the Fifth Circuit, "[a]dverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002) (citing *Walker v. Thompson*, 214 F.3d 615, 629 (5th Cir. 2000)). "As a general rule, employment actions are not adverse where pay, benefits, and level of responsibility remain the same." *Richardson v. Monitronics Int'l, Inc.*, 2004 WL 287730, at *5 (N.D. Tex., Jan. 27, 2004) (citing *Watts v. Kroger Co.*, 170 F.3d 505, 512 (5th Cir. 1999)). Thus, under Fifth Circuit precedent, assignment to a "less desirable office" does not constitute an adverse employment action. *See Wooten v. St. Francis Med. Ctr.*, 108 Fed. Appx. 888, 891 (5th Cir. 2004) (finding that plaintiff's move from a five-by-ten cubicle shared with four other employees to an office converted from a storage area did not constitute an adverse employment action under Fifth Circuit precedent).

Based on Fifth Circuit precedent on adverse employment actions and under the circumstances described by Plaintiff, the Court finds that Plaintiff's office assignment does not constitute an adverse employment action. Plaintiff has not asserted that her pay, benefits, or level of responsibility changed as a result of her office assignment. Circumstances such as those

28

described by Plaintiff, while somewhat inconvenient and unpleasant, do not rise to the level of a materially adverse change in the conditions or terms of her employment. *See Reiter v. Metro. Trans. Authority of New York,* 224 F.R.D. 157, 169 (S.D.N.Y. 2004) (stating that loss of desirable office space does not constitute an adverse employment action by itself) (citing *Staff v. Pall Corp.*, 233 F. Supp. 2d 516, 532 (S.D.N.Y. 2002)); *Banks v. Metro-North Commuter R.R.*, 2000 WL 45435, at *7 (S.D.N.Y. Jan. 19, 2000) (granting summary judgment for defendant on plaintiff's claim that he was denied adequate office space and furniture, where plaintiff presented no evidence that the denial constituted a materially adverse change in the condition or terms of his employment)*; Annett v. Univ. of Kansas*, 82 F. Supp. 2d 1230, 1244 (D. Kan. 2000) ("It is an employer's prerogative to assign its employees such office space as is necessary to do the job.")*.* The conditions Plaintiff describes certainly do not rise to the level of hardship shown by the plaintiff in *Singletary v. District of Columbia*, in which the D.C. Circuit found merit in the plaintiff's contention that assignment to an unheated, unventilated, poorly lit storage closet, containing brooms and boxes of debris, accessible only through a clinic for which the plaintiff did not have a key, and where other, more suitable working places were available, constituted an adverse employment action. 351 F.3d 519, 528 (D.D.C. 2003).     In order to make a prima facie showing of sex discrimination, a plaintiff must demonstrate the occurrence of an adverse employment action. *See, e.g. Ward v. Bechtel Corp.*, 102 F.3d 199, 202 (5th Cir. 1997) (noting that third prong of a prima facie case of sex discrimination requires a showing that employee experienced an adverse employment action, such as termination); *Davis,* 383 F.3d at 319 (noting that the second prong of a prima facie case of retaliation requires a showing that employee experienced an adverse employment action).   Because occupying less desirable office space does not constitute an adverse employment action, Plaintiff cannot establish

a prima facie case of sex discrimination or retaliation as to this claim.  Accordingly, Defendant is entitled to summary judgment on this claim.

### 4.  *Failure to Promote*

On November 8, 1999, Plaintiff filed a formal complaint asserting that "[o]n January 21, 1999, I learned that another employee was selected to be Chief of the Financial Litigation Unit (FLU), a position for which I am qualified and in which I had repeatedly expressed an interest.  I have received financial litigation training and I have spent almost 30 months working on FLU cases."  (Pl. Surreply App., Exh. 3 at 14.)  Plaintiff does not specifically address this claim in her complaint, response, or surreply, but she does provide some details in the affidavits attached to her response.  In one affidavit, Plaintiff states that "[i]n late January or early February of 1999, the USAO-SDTX selected AUSA Mirsky to be the Chief of the Financial Litigation Unit.  Although I was the only AUSA who had been continually working in the Financial Litigation Unit for about two and one-half years at that time, I was not selected to be the Chief of the Financial Litigation."  (Pl. Resp. App., Exh. 2 at 153.)

Applying the *McDonnell Douglas* framework in a failure to promote case, Plaintiff must make a prima facie showing that: (1) she is a member of a protected class, (2) she was qualified for the position sought, (3) she was rejected for the position, and (4) the position she sought was filled by someone outside the protected group.  *Blow*, 236 F.3d at 296 (citations omitted).  The statements in Plaintiff's affidavit establish the first, third and fourth prongs of a prima facie case of failure to promote–that as a woman, she is part of a protected group, and that the promotion was given to an individual outside that group.  Plaintiff's assertion that she repeatedly expressed an interest in the promotion, however, does not satisfy her burden to establish the second element of the prima facie

30

test–that she *sought* the position of FLU Chief.[15]

"The second *McDonnell Douglas* prong ('he was qualified for the position sought') requires the position to actually be *sought*–without that, normally a plaintiff cannot be denied employment." *Kolpakchi v. Principi*, 113 Fed. Appx. 633, 636 (5th Cir. 2004). A plaintiff must demonstrate that she applied for the position, unless she can "show that such an application would have been a futile gesture." *Shackleford v. Deloitte & Touche, LLP*, 190 F.3d 398, 406 (5th Cir. 1999) (citing *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 363-66 (1977); *Claiborne v. Ill. Cent. R.R.*, 583 F.2d 143, 150 (5th Cir. 1978)). "Making such a claim usually requires a showing that the applicant for the promotion was deterred by a known and consistently enforced policy of discrimination." *Shackleford,* 190 F.3d at 406 (citing *Teamsters*, 431 U.S. at 363-66; *Malarkey v. Texaco Inc*., 983 F.2d 1204, 1213 (2d Cir. 1993)).

Some courts have excused the application requirement under other limited circumstances, although the Fifth Circuit has not expressly adopted exceptions to the requirement that a plaintiff show that she applied for or was deterred from applying for a position by a known and consistently enforced policy of discrimination. *See Kolpakchi,* 113 Fed. Appx. at 637 (stating that the Fifth Circuit "has not explicitly adopted our sister circuits' rules with regards to the necessity of a formal application; nor have we specifically rejected such a more expansive rule [encompass[ing] situations where, through the fault of the employer, an employee's desire to hold a position is not recognized

---

[15] At the prima facie stage, a plaintiff's burden regarding establishment of qualification is not onerous; she simply must provide evidence that she met the objective qualifications for the position, although she need not show that she was better qualified than the individual selected. *Medina v. Ramsey Steel*, 238 F.3d 674, 681 (5th Cir. 2001). Plaintiff, however, has failed to meet her summary judgment burden of pointing to specific evidence in the record establishing that she was qualified. "The Court is not obligated to scour the record in search of evidence" that Plaintiff is qualified for the position she sought. *Ahrens v. Perot Sys. Corp*., 39 F. Supp. 2d 773, 782 n.24 (N.D. Tex. 1999) (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 457 (5th Cir. 1998). However, the Court need not determine whether Plaintiff satisfied the objective qualifications for the position of FLU Chief; even if she made such a showing, she has failed to demonstrate that she in fact sought that position, as discussed in section III.C.4.

or properly considered]").  The formal application requirement has been excused, for example, "where a vacant position was not posted, or where the normal hiring procedures did not entail formal application."  *Lenihan*, 994 F. Supp. at 794.  "In these situations, however, the plaintiff must show there was an available position and that she expressed some interest in a promotion or that the employer 'has some reason or duty to consider [her] for the post.'"  *Id.*

In the instant action, Plaintiff alleges that she had "repeatedly expressed an interest" in the position of FLU Chief.  Plaintiff has neither alleged nor pointed to evidence that she applied for the position she sought.  Plaintiff has also failed to assert or point to evidence suggesting that she was deterred from applying by a known and consistently enforced policy of discrimination, or that applying would have been futile due to a policy of known and consistent discrimination.  *See Lenihan,* 994 F. Supp. at 794 (noting that to overcome the lack of an application, a plaintiff must present overwhelming evidence of pervasive discrimination in all aspects of the employer's internal employment practices) (quoting *Kreuzer v. Brown*, 128 F.3d 359, 363 n.2 (6th Cir. 1997)).

Without deciding whether the exceptions to the requirement that a plaintiff demonstrate that she applied for or was deterred from applying for a position can be applied her, the Court finds that Plaintiff has not satisfied those more lenient standards.  While in her EEOC complaint Plaintiff states that she "repeatedly expressed an interest" in the position of Chief of the FLU, she does not state to whom she expressed her interest.  She points to no evidence that she talked to a selecting official or submitted a resume or an informal note.  *See id.* (noting that Plaintiff did not assert that "she submitted a resume, a formal application, or even an informal note seeking the position.").  She has not asserted nor pointed to evidence that the USAO had a duty or reason to consider her for the position.

In sum, Plaintiff has failed to demonstrate that she sought the FLU position, either by applying for it or showing that she was deterred from applying, or based on exceptions recognized by some courts.  All she has presented is an unsubstantiated assertion in her EEOC complaint that she repeatedly expressed interest in the position.  By offering only an unsubstantiated assertion regarding one of the prima facie elements of her discrimination claim, Plaintiff has failed to satisfy her summary judgment burden.  *See Little*, 37 F.3d at 1075.  Accordingly, Defendant is entitled to summary judgment on this claim.

**D.**   **Retaliation Claims**

Applying the *McDonnell Douglas* framework to Plaintiff's claims of retaliation, she must make a prima facie showing that: (1) she engaged in an activity protected under Title VII; (2) she was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action.  *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004) (citing *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003)).  With respect to the first element of a retaliation claim, "[a]n employee has engaged in activity protected by Title VII if she has either (1) 'opposed any practice made an unlawful employment practice' by Title VII or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII."  *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996).  Plaintiff asserts generally in her second amended complaint and response that she participated in various protected activities from May of 1992 until her termination in March of 2001.  (Second Am. Compl. at 2, ¶¶ 3-5; Pl. Resp. Br. at 4.)   The Court therefore will assume without deciding that Plaintiff has established the first prong of the prima facie retaliation case with respect

to each of her retaliation claims, discussed in greater detail below.[16]

### 1.     Termination

With respect to Plaintiff's retaliation claim based on her termination, she satisfies the second prong of the prima facie case because termination is an adverse employment action.  Plaintiff has failed, however, to satisfy the third prong by showing the existence of a causal link between her protected activity and her termination.  Her removal was not proposed for nearly a year after she filed the last EEOC complaint, one and a half years after she sent the letters to her senators regarding Mosbacker, and more than eight years after she allegedly began engaging in protected activity.  While close temporal proximity can create an inference of retaliation, the timing here appears to create the opposite inference.  *See Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1092 (5th Cir. 1995) (finding nothing suspicious about a suspension occurring several years after plaintiff asserts that he first engaged in protected activity).  Thus Plaintiff has failed to present a prima facie case of retaliation based on her termination, and Defendant is entitled to summary judgment on this claim.  Even if Plaintiff had established a prima facie claim of retaliation with respect to her termination, her claim would nevertheless fail because, as discussed in the previous section, she has failed to establish that Defendant's legitimate, nondiscriminatory reasons for terminating her were pretextual.

---

[16]Plaintiff's appendix includes copies of EEOC complaints filed prior to her complaints about office space and her failure to receive a promotion.  All three of those EEOC complaints were filed prior to her termination.  She also states that her removal was predicated on letters she sent to her United States senators in April 1999 citing reasons she thought that Mosbacker should not have been selected for the position of United States Attorney.  (Second Am. Compl. at 2, ¶ 6; Pl. Resp. App. Exh. 2 at 152.)  Thus, Plaintiff has established that she engaged in protected activity with respect to her office space, promotion, and termination claims.  However,  Plaintiff does not identify specific activity prior to the time she filed the EEOC complaint based on her pay, nor does she point to evidence in the record supporting her assertions.  In an abundance of caution, the Court has reviewed Plaintiff's appendices and notes that Plaintiff's affidavit states that she had previously filed a grievance regarding alleged gender discrimination in 1994 and gave a deposition in EEOC proceedings on behalf of another USAO employee in 1996.  (Pl. Resp. App., Exh. 2 at 147; 150.)

### 2.        Level of Compensation

With respect to the second element of a prima facie retaliation claim based on her level of compensation, Plaintiff has not pointed to evidence to support her claim that she received less pay than any similarly situated employee, as discussed above, and thus has failed to create a question of fact regarding the existence of an adverse employment action.  Plaintiff has also failed to establish the third element by showing a causal connection between her rate of compensation and any protected activity she engaged in.

"Although the plaintiff's burden at the prima facie state is not onerous, the plaintiff must produce at least some evidence that the decisionmakers had knowledge of his protected activity." *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 883 n.6 (5th Cir. 2003) (citing *Medina*, 238 F.3d at 684.)  Plaintiff has failed to precisely identify those individuals responsible for determining her level of pay.[17]  Because she has failed to identify the individuals who set her compensation, she cannot demonstrate that the decisionmakers were aware of her protected activity.  As a result, she fails to demonstrate a causal link between her protected activity and her compensation and pay increases. *See Manning,* 332 F.3d at 884 (finding that plaintiff who failed to show that decisionmakers were aware of his lawsuit failed to establish a causal link between protected activity and adverse employment action).  Plaintiff thus has failed to establish a prima facie case of retaliation regarding her disparate pay claim, and Defendant is entitled to summary judgment on this claim.

---

[17]Moreover, inconsistent statements within Plaintiff's appendices fail to shed light on the question of who was responsible for setting Plaintiff's compensation.  Plaintiff's affidavit states that "[a]n AUSA's increases in compensation, an AUSA's bonuses, and an AUSA's awards at the USAO-SDTX are based on the AUSA's Performance Appraisal Reports (PARs).  Neither Michael McCormick, my immediate supervisor, nor any supervisor of the USAO-SDTX gave me a PAR for the period from January 1, 1996 to September 1, 1996." (Pl. Resp. App., Exh. 2 at 151.)  A document in the appendix to her surreply states that "the USA sets [the AUSAs] basic annual salary."  (Pl. Surreply App., Exh. 17 at 125, ¶ 32.)  Plaintiff has therefore failed to make clear whether her immediate supervisor, another supervisor, the USA, or some combination of those individuals is responsible for determining her pay.

### 3.      *Pay Increase*

In the same EEOC complaint regarding her level of compensation, Plaintiff also asserts that she has "been denied pay increases because of my participation in the department's EEOC process since 1996."[18] (Pl. Surreply App., Exh. 1 at 2.)  Plaintiff does not specifically address this retaliation claim in her pleadings.

Plaintiff has not provided any evidence that she was denied pay increases between 1996 and the time she filed her complaint in September 1998.  In fact, her assertion that she was denied pay increases is inconsistent with statements in an affidavit accompanying her response.  Plaintiff's affidavit includes a timeline in which she states that she received a raise of $1,000 in May 1997 and $800 in May 1998.  (Pl. Resp. App., Exh. 1 at 132-133.)  Plaintiff has therefore presented evidence that she did receive pay raises following her alleged participation in the DOJ's EEOC process between 1996 and the time she filed the complaint regarding her failure to receive pay raises.  Because she has presented no evidence that she was denied pay raises between 1996 and the time she filed her EEOC complaint in 1998 regarding pay raises, Plaintiff has failed to create a genuine issue of material fact as to this part of her EEOC complaint, and summary judgment is appropriate

---

[18]Plaintiff's EEOC complaint plainly alleges a *denial* of pay increases.  Plaintiff has not indicated in any of her submissions to the Court that she was actually dissatisfied with the size of her pay raises.  The Court notes that although Plaintiff is proceeding pro se, she is an attorney who has been licensed by the State of Texas since 1986. While *pro se* parties are normally accorded more leniency in the construction of their pleadings, *see Estelle v. Gamble*, 429 U.S. 97, 106 (1976), the Court need not afford a licensed attorney such leniency when the attorney appears *pro se*.  *See Harbulak v. Suffolk Co.*, 654 F.2d 194, 198 (2d Cir. 1981) (holding that the plaintiff "is a practicing attorney and, therefore, cannot claim the special consideration which courts customarily grant to *pro se* parties"); *Tindal v. Gibbons*, 156 F. Supp. 2d 1292, 1294 n.1 (M.D. Fla. 2001) ("Although the Court generally construes the pleadings of a *pro se* litigant liberally, because Plaintiff is a practicing attorney, the Court is not required to show him special leniency.") (citation omitted); *Define v. Latimer*, 79 F.R.D. 5, 7 (E.D.N.Y. 1997) ("Plaintiff, proceeding pro se, is an attorney, and the court has a right to expect skillfully drawn pleadings from her.").  Accordingly, the Court need not extend the same leniency to Plaintiff that it extends to other *pro se* parties, and the Court therefore declines to construe her claim as one related to the size of her pay increases.

for Defendant. *See Kang v. Bd. of Supervisors of La. State Univ.*, 75 Fed. Appx. 974, 976-977 (5th Cir. 2003) (per curiam) (declining to say that plaintiff suffered an adverse employment action where he argued that he received a less-than average pay raise but presented evidence that he had in fact received pay raises larger than those of several colleagues).

### 4. *Office Space*

Plaintiff alleges a claim of retaliation based on her office assignment. As discussed above, the Court found that, in light of Fifth Circuit case law and under the circumstances described by Plaintiff, her office assignment does not constitute an adverse employment action. *See Wooten*, 108 Fed. Appx. at 891 (finding that plaintiff's move from a five-by-ten cubicle shared with four other employees to an office converted from a storage area did not constitute an adverse employment action under Fifth Circuit precedent); *Green*, 284 F.3d at 657 (citing *Walker*, 214 F.3d at 629) ("[a]dverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." ); *Richardson*, 2004 WL 287730, at *5 (citing *Watts*, 170 F.3d at 512) ("As a general rule, employment actions are not adverse where pay, benefits, and level of responsibility remain the same."). Plaintiff therefore cannot establish a prima facie case of retaliation regarding her office assignment, and Defendant is entitled to summary judgment on this claim.

### 5. *Failure to Promote*

With respect to Plaintiff's claim that she did not receive a promotion to FLU Chief, Plaintiff's response and surreply assert, and Defendant does not refute, that Plaintiff was not promoted. The failure to receive a promotion clearly constitutes an adverse employment action, and thus she has satisfied the second prong of the prima facie retaliation case. *See Webster v. Bass*

37

*Enters. Prod. Co.*, 192 F. Supp. 2d 684 (N.D. Tex. 2002).

To establish the third element of a prima facie retaliation case, Plaintiff must show a minimal causal connection between her protected activity and Defendant's decision not to promote her.  To demonstrate causation, "a plaintiff must at least raise a question about whether the person who denied him a promotion was aware of the protected activity."  *Davis*, 383 F.3d at 320 (citing *Manning*, 332 F.3d at 883).  In the instant matter, Plaintiff has failed to point to evidence that the decisionmaker was aware of her protected activity; in fact, she has wholly failed to identify who made the decision not to promote her.  Thus, Plaintiff cannot establish a prima facie case of retaliation for her failure to promote claim.[19]  *See Manning*, 332 F.3d at 884 (finding that plaintiff could not establish a prima facie case of retaliation for a lateral transfer position where he produced no evidence that the decisionmakers were aware of his protected activities).  Because Plaintiff has failed to establish a prima facie retaliation claim based on her failure to receive a promotion, Defendant is entitled to summary judgment on this claim.

---

[19]Out of an abundance of caution, the Court has examined the appendices to Plaintiff's response and surreply, and in particular has reviewed the timeline set forth in Plaintiff's affidavit.  The Court notes that Plaintiff states that in October of 1998, she filed an EEOC complaint regarding office space, discussed above, and testified at an EEOC hearing on behalf of Adelfa Garcia, a Paralegal Assistant in the Corpus Christi office of the USAO-SDTX.  (Pl. Resp. App., Exh. 1, 130-131; 135.)  The EEOC complaint she refers to was her initial complaint, filed October 1, 1998; she filed a formal EEOC complaint on December 17, 1998.  (Pl. Surreply App., Exh. 2 at 7-8.)  In her EEOC complaint regarding her failure to receive the promotion, Plaintiff states that she found out she was not selected as FLU Chief on January 21, 1999.  (Pl. Surreply App., at Exh. 3 at 14.)  Based on the Court's review of Plaintiff's appendices, she appears to have engaged in protected activity approximately one and three months prior to finding out about her non-selection.  "'[T]he mere fact that some adverse action is taken after an employee engages in some type of protected activity will not always be enough for a prima facie case.'"  *Roberson v. Alltel*, 373 F.3d at 655 (quoting *Swanson v. Gen. Servs. Admin.*, 110 F.3d at 1188 n.3).  "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient causality uniformly hold that the temporal proximity must be 'very close.'"  *Clark Co. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001) (citations omitted).  Here, Plaintiff did not point to this temporal proximity in support of her claim, thus failing to satisfy her summary judgment burden to point to specific facts in the record creating a genuine issue of material fact.  *See Jones*, 82 F.3d at 1338.  She also failed to point to a decisionmaker or show the decisionmaker's awareness of her protected activity or interest in the promotion.  Under such circumstances, temporal proximity alone is insufficient to establish a prima facie case of retaliation.  *See Clark Co. Sch. Dist.*, 532 U.S. at 272 (mentioning cases accepting temporal proximity alone as establishing causation, but only where the employer is shown to have *knowledge* of that protected activity).

### IV.   MOTION FOR RELIEF

Plaintiff filed an unspecified motion for relief on March 9, 2005, and a brief in support of that motion on March 15, 2005.  In her motion and brief, Plaintiff asserts that "Defendant was not genuinely interested in settling the case" and "Defendant used mediation as a subterfuge to give several of Defendant's attorneys the opportunity to observe Plaintiff's demeanor in preparation for trial." (Pl. Mot. for Relief at 2-3; Pl. Br. in Support of Mot. for Relief at 3.)  In her motion and brief, Plaintiff recounts the mediator's description of Defendant's settlement offer. (Pl. Mot. for Relief at 2; Pl. Br. in Support of Mot. for Relief at 2.)  She appears to contend that the sum offered by Defendant reveals his lack of genuine interest in settling the case.  (Pl. Mot. for Relief at 2; Pl. Br. in Support of Mot. for Relief at 2.)  In addition, Plaintiff appears to contend that Defendant's offer to pay a portion of the mediation fee prior to the mediation evidences Defendant's unwillingness to enter into a settlement, through which Defendant could have later reimbursed her expenses.[20]  (App. to Pl. Mot. for Relief, Exh. N at 12.)  On the basis of these allegations, Plaintiff requests that the Court enter a finding that Defendant intentionally violated Section IV of the Northern District's Civil Justice Expense and Delay Reduction Plan ("Plan") for failure to make a good faith effort to settle the case and that this violation caused Plaintiff to suffer "unnecessary and immeasurable emotional and physical harm" and monetary damages.  (Pl. Br. in Support of Mot. for Relief  4-5.)  Furthermore, she requests an award of $6,092 in attorney's fees and costs and an order allowing Plaintiff to conduct additional discovery.  *Id*. at 5-6.  In a section entitled "Authorities," Plaintiff states that she relies on equity as well as "the explicit and implicit intent and spirit" of Section IV

---

[20]Plaintiff wrote ""[i]f EOUSA is genuinely interested in settling the case, then exactly why is EOSUA offering to pay some of my share of the expenses of mediation before the mediation?" My expenses for mediation could be easily reimbursed within 30 days pursuant to a settlement."  (App. to Pl. Mot. for Relief, Exh. N. at 12.)

of the Plan and Local Rule 16.3, both of which require that parties make good-faith efforts to settle. *Id*. at 7.  Plaintiff acknowledges, however, that Section IV of the Plan and Local Rule 16.3 "do not identify any sanctions that the Court may impose."  *Id*.

Defendant contends that Plaintiff's motion should be denied for two reasons.  First, Defendant argues that by disclosing confidential communications made during the mediation, Plaintiff herself violated the Plan.  (Def. Resp. to Pl. Mot. for Relief at 2.)  Defendant, citing *Gore v. Experian Info. Solutions, Inc*., 2004 WL 1381034, at *1 (N.D. Tex. June 21, 2004), contends that under such circumstances, sanctions should not be awarded.  *Id*.  In *Gore*, the Court addressed the plaintiff's motion for sanctions for alleged bad faith conduct during mediation.  *Id*.  Because the motion was premised on confidential communications, and such disclosure violated Section III. F of the Plan, which provides that "communications made during ADR procedures are confidential and protected from disclosure," the Court denied the motion.  *Id*.

In her motion and brief, Plaintiff has revealed confidential communication that occurred during mediation, as did the plaintiff in *Gore*.  *(See* Pl. Mot. for Relief at 2; Pl. Br. in Support of Mot. for Relief at 2.)   Based on Plaintiff's revelation of confidential communication, denial of Plaintiff's motion for relief is appropriate.  *See Gore,* 2004 WL 1381034, at *1; *see also In re Lake Utopia Paper Ltd.*, 608 F.2d 928, 930 (2d Cir. 1979) (denying appellee's motion for attorneys fees and costs because appellee's brief revealed confidential communication during a settlement conference).

Although denial of Plaintiff's motion for relief is appropriate on grounds that she disclosed confidential communications, the Court also addresses Defendant's second assertion that relief should be denied because Defendant did in fact act in good faith at the mediation.  (Def. Resp. to

Pl. Mot. Relief at 3.)  Defendant argues that he offered to settle the case for a sum based on his assessment of the case's settlement value.  *Id*. at 4.  He argues that such an offer does not constitute bad faith simply because the sum differs from that demanded by Plaintiff.  *Id*.

In *Dawson v. United States*, the Fifth Circuit reversed the district court's award of sanctions based on the defendant's refusal to make a settlement offer.  68 F.3d 886, 899 (5th Cir. 1995).  Noting that the defendant appeared to have had numerous legitimate reasons for not making a settlement offer, the Fifth Circuit determined that the district court had erred in reading a local rule requiring that parties make good faith efforts to settle as authorizing an award of sanctions for a party's failure to make a settlement offer.  *Id*. at 893-99.  In the instant matter, Defendant made a settlement offer and provided a legitimate reason for offering a sum lower than that sought by Plaintiff.  In addition, Plaintiff has presented no evidence that Defendant failed to act in good faith.  The Court thus finds that Defendant's failure to make a settlement offer satisfactory to Plaintiff does not constitute failure to mediate in good faith as required by the Plan and the Local Rule 16.3.  Accordingly, Plaintiff's motion for relief should be denied.

## V.  CONCLUSION

For the foregoing reasons, the Court concludes that no genuine issue of material fact exists with respect to Plaintiff's Title VII claims, and that summary judgment is appropriate in this case.  Accordingly, *Defendant John Ashcroft's Motion for Summary Judgment* is **GRANTED.**  In addition, Plaintiff's motion for relief is **DENIED**.

**SO ORDERED**, on this 15th day of June, 2005.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

41